**RECORD NO. 14-4304**

In The

# United States Court Of Appeals For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

## v.

## MICHAEL T. MCGEE,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING**

―――――――――

**BRIEF OF APPELLANT**

―――――――――

**Elgine McArdle**
**MCARDLE LAW OFFICES**
**2139 Market Street**
**Suite 206**
**Wheeling, WV  26003**
**(304) 232-0700**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230 ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ...........................................................................iv

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................2

STATEMENT OF THE CASE........................................................................4

    Statement of the Facts...........................................................................5

SUMMARY OF ARGUMENTS.....................................................................10

ARGUMENTS.........................................................................................12

    Standards of Review ...........................................................................12

    Discussion .......................................................................................14

I.     The district court erred in admitting 404(b) evidence over Defendant's objection in three specific instances ...............................14

    A.    ERROR IN THE ADMISSION OF ASHLEY HAYES BUYS ...................................................................................14

    B.    ERROR IN THE ADMISSION OF UNCHARGED DRUG DISTRIBUTION .......................................................18

    C.    THE TRIAL COURT ABUSED ITS DISCRETION AND REVERSIBLY ERRED IN ADMITTING PREJUDICIAL, IMMATERIAL AND IRRELEVANT EVIDENCE OF MR. MCGEE'S PRIOR CONVICTIONS FOR AGGRAVATED ROBBERY, DOMESTIC VIOLENCE; COUPLED WITH EVIDENCE OF MR. MCGEE SERVING A CRIMINAL SENTENCE AT THE TIME OF THE CURRENT OFFENSE ...................................................................................21

II.    Insufficient evidence existed to prove Mr. McGee engaged in a single conspiracy lasting from November, 2012 to June, 2013 as alleged in the Superseding Indictment because the only evidence of alleged drug distribution from November, 2012 until February, 2013 involved a government informant, incapable of being a co-conspirator by law. Further, the government failed to prove the requisite nexus or overt act to link Mr. McGee to any drug conspiracy within the Northern District of West Virginia ....................................................24

III.   The district court violated Mr. McGee's constitutional right to be present during the discussion and formulation of a response to a jury question, namely, "Do the two people mentioned in indictment one, do the conspiracy stated have to start in November?"........................................................32

IV.   The District Court's application of U.S.S.G. § 4B1.1 demonstrates reversible error in the consideration of the following prior convictions, namely ...................................35

     A.   THE 1989 CONVICTION FOR AGGRAVATED ROBBERY PURSUANT TO OHIO REVISED CODE (ORC) 2911.01 SHOULD NOT COUNT AS A PREREQUISITE CONVICTION...............................................37

     B.   THE 2004 CONVICTION FOR POSSESSION OF DRUGS PURSUANT TO ORC § 2925.11 SHOULD NOT COUNT AS A PREREQUISITE CONVICTION ..........37

     C.   THE 2009 CONVICTION FOR TRAFFICKING IN DRUGS PURSUANT TO ORC § 2925.03 SHOULD NOT COUNT AS A PREREQUISITE CONVICTION ..........38

V.    The district court committed reversible error in applying a two level enhancement for obstruction of justice based upon Mr. McGee's presentation of evidence regarding the informant for the purpose of demonstrating bias. The Defendant should not be penalized with an obstruction of justice enhancement merely because he exercised his constitutional right to trial............................40

CONCLUSION ....................................................43

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S):</u>

## <u>CASES</u>:

*Cohn v. Papke*,
    655 F.2d 191 (9th Cir. 1981) ........................................................................18

*Glasser v. United States*,
    315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942) ........................................24

*Jackson v. Virginia*,
    443 U.S. 307 (1979)........................................................................................31

*Koteakos v. United States*,
    328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) ......................25, 31, 43

*Michelson v. United States*,
    335 U.S. 469 (1948)........................................................................................20

*Old Chief v. United States*,
    519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) ..............................23

*Reyes v. Missouri Pacific Railroad Co.*,
    589 F.2d 791 (5th Cir. 1979) ................................................................... 18-19

*Rogers v. United States*,
    422 U.S. 35, 45 L. Ed. 2d 1, 95 S. Ct. 2091 (1975) ...............................33, 34

*United States v. Arrigada*,
    451 F.2d 487 (4th Cir. 1971) ........................................................................12

*United States v. Bailey*,
    990 F.2d 119 (4th Cir. 1993) ........................................................................15

*United States v. Bailleaux*,
    685 F.2d 1105 (9th Cir. 1982) ......................................................................19

*United States v. Bassil*,
    932 F.2d 342 (4th Cir. 1991) ..................................................................13, 36

iv

*United States v. Burgos*,
   94 F.3d 849 (4th Cir. 1996) ........................................................................25

*United States v. Camacho*,
   955 F.2d 950 (4th Cir. 1992) ......................................................................33

*United States v. Collazo*,
   732 F.2d 1200 (4th Cir. 1984), *cert. denied*,
   469 U.S. 1105, 105 S. Ct. 777, 83 L. Ed. 2d 773 (1985) .............................25

*United States v. Daughtrey*,
   874 F.2d 213 (4th Cir. 1989) ...............................................................13, 36

*United States v. Engle*,
   676 F.3d 405 (4th Cir.), *cert. denied*, 133 S. Ct. 179 (2012) .......................24

*United States v. Goss*,
   329 F.2d 180 (4th Cir. 1964) ...............................................................26, 31

*United States v. Grimmond*,
   137 F.3d 823 (4th Cir. 1998) ......................................................................22

*United States v. Harris*,
   814 F.2d 155 (4th Cir. 1987) ...............................................................34, 35

*United States v. Kennedy*,
   32 F.3d 876 (4th Cir. 1994) .................................................................26, 32

*United States v. King*,
   628 F.3d 693 (4th Cir. 2011) ......................................................................24

*United States v. Laughman*,
   618 F.2d 1067 (4th Cir. 1980) ....................................................................30

*United States v. Mark*,
   943 F.2d 444 (4th Cir. 1991) ......................................................................15

*United States v. McLean*,
   715 F.3d 129 (4th Cir. 2013) ......................................................................24

*United States v. McLean*,
    No. 96-4789 (4th Cir. 1998) ........................................................................31

*United States v. Mohr*,
    318 F.3d 613 (4th Cir. 2003) ......................................................................23

*United States v. Montanez*,
    442 F.3d 485 (6th Cir. 2006) ...............................................................38, 39

*United States v. Powers*,
    59 F.3d 1460 (4th Cir. 1995) ......................................................................15

*United States v. Puckett*,
    61 F.3d 1092 (4th Cir. 1995) ......................................................................13

*United States v. Rawle*,
    845 F.2d 1244 (4th Cir. 1988) ....................................................................12

*United States v. Robinson*,
    700 F.2d 205 (5th Cir. 1983) ......................................................................20

*United States v. Wilson*,
    115 F.3d 1185 (4th Cir. 1997) ....................................................................12

## **STATUTES:**

18 U.S.C. § 3553 .............................................................................................36

18 U.S.C. § 3742(a) ...........................................................................................1

21 U.S.C. § 841(a)(1) ........................................................................................4

21 U.S.C. § 841(b)(1)(C) ...................................................................................4

O.R.C. § 2911.01 .........................................................................3, 11, 35, 36

O.R.C. § 2925.03 ....................................................................................*passim*

O.R.C. § 2925.03(A)(1) ...................................................................................39

O.R.C. § 2925.11 ....................................................................................*passim*

## **CONSTITUTIONAL PROVISIONS:**

U.S. Const. amend V .................................................................33, 34

U.S. Const. amend VI .................................................................33, 34

## **SENTENCING GUIDELINES:**

U.S.S.G. § 3C1.1 .................................................................40, 41

U.S.S.G. § 4A1.2(e)(1) ...........................................................37

U.S.S.G. § 4B1.1 .................................................................*passim*

U.S.S.G. § 4B1.2 .................................................................37

U.S.S.G. § 4B1.2(b) .............................................................38

## **RULES:**

Fed. R. Crim. P. 43.................................................................32, 33, 34

Fed. R. Crim. P. 43(a) ...........................................................12, 33, 34

Fed. R. Crim. P. 52(a) ...........................................................12, 32, 35

Fed. R. Evid. 404 ...................................................................18

Fed. R. Evid. 404(b)..............................................................*passim*

Fed. R. Evid. 403 .................................................................22

## <u>OTHER</u>:

2 *Weinstein's Evidence*,
   ¶ 404[8] ...................................................................................20

22 Wright & Graham,
   *Federal Practice & Procedure*, § 5239 (Supp. 1987) ...................................18

McCormick, *Law of Evidence*,
   § 188 (2d ed. 1972) .........................................................................18

## **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this appeal pursuant to Title 18, U.S. Code § 3742(a). The United States District Court for the Northern District of West Virginia entered a judgment in this case on April 9, 2014, and having timely filed a Notice of Appeal on April 15, 2014, this appeal comes before the Court for consideration.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

### I.

Whether the district court erred in admitting 404(b) evidence over Defendant's objection in three specific instances:

A.  Admitting controlled buys from an entirely unrelated and botched investigation.

B.  Admitting unreliable evidence of alleged marijuana and heroin distributions within amidst allegations of a conspiracy to distribute of cocaine powder.

C.  Admitting irrelevant and prejudicial, unrelated and unnecessary, evidence of armed robbery and domestic violence through the admission of an unredacted sentencing order.

### II.

Whether insufficient evidence existed to prove Mr. McGee engaged in a single conspiracy lasting from November, 2012 to June, 2013 as alleged in the Superseding Indictment.

### III.

Whether the district court violated Mr. McGee's constitutional right to be present during the discussion and formulation of a response to a jury question during deliberations.

IV.

Whether a de novo review of the District Court's application of U.S.S.G. § 4B1.1 demonstrates reversible error in the consideration of the following prior convictions, namely:

    A.    1989 conviction for aggravated robbery pursuant to ORC § 2911.01;

    B.    2004 conviction for possession of drugs pursuant to ORC § 2925.11; and

    C.    2009 convictions for trafficking in drugs pursuant to ORC § 2925.03

V.

Whether the district court committed reversible error in applying a two level enhancement for obstruction of justice.

## <u>STATEMENT OF THE CASE</u>

On June 4, 2013, a Federal Grand Jury for the Northern District of West Virginia returned a two count indictment against Appellant, Michael McGee (hereinafter "Mr. McGee"). Count One charged a conspiracy to possess with intent to distribute and to distribute cocaine beginning by at least January 2013 and continuing through the date of the Indictment.  Count Two charged Mr. McGhee with possession with the intent to distribute cocaine in Weirton, West Virginia on or about March 30, 2013. (Joint Appendix, [hereinafter "JA"] Vol. I at 14-15).

 On June 18, 2013, a Federal Grand Jury for the Northern District of West Virginia returned a two count superseding indictment against Mr. McGee which altered Count One to state that Mr. McGee and ***Ronald Snider*** conspired to possess with intent to distribute and to distribute cocaine beginning by at least ***November 2012***.  Count Two was altered to charge the defendant with possession with intent to distribute cocaine in Weirton, West Virginia on or about ***March 10, 2013*** in violation of Title 21, U.S. Code §§ 841(a)(1) and (b)(1)(C). (JA Vol. I at 16).

On December 31, 2013, Mr. McGee filed his Motion In Limine to preclude admission of unrelated and irrelevant controlled buys using government informant Ashley Hayes (JA Vol. I at 24-27), as well as an Objection to the Government's Proposed Use of 404(b) Evidence, in the form of alleged distribution of crack

cocaine and heroin. (JA Vol. I, at 27-32). Both parties extensively presented their respective arguments at the pretrial hearing on January 8, 2014 (JA Vol. I, pp. 53-74) but ultimately the Court denied Mr. McGee's motion in limine and objections thereby permitting the admission of the irrelevant and prejudicial 404(b) evidence.

On January 8, 2014, a three-day jury trial took place and after an obvious confusion by the jury as evidenced by their question during deliberations, (JA 551) the jury returned a guilty verdict as to Count One and a not guilty verdict as to Count Two. (JA at 561-562).

Mr. McGee timely filed his motions for arrest of judgment and for a new trial. (JA at 563), which the district court denied by Memorandum Opinion on March 12, 2014. (JA at 583).

On April 9, 2014, the district court sentenced Mr. McGee to a 262 month term of incarceration. (JA at 643). Mr. McGee timely filed a Notice of Appeal on April 15, 2014. (JA at 649). Mr. McGee files this appeal seeking a reversal of the conviction, or in the alternative a new trial.

### **Statement of the Facts**

The evidence presented in this case was that multiple conspiracies existed, if any. The government's evidence demonstrated that McGee distributed single hits of cocaine to a government informant Ashley Hayes beginning in November, 2012 and continuing through January, 2013 in Steubenville, Ohio. (JA 360-370)

The government's evidence next picked up with alleged dealings between Ronald Snider and Defendant McGee in Steubenville, Ohio in February, 2013 and continuing through April, 2013 when the "buy-bust" took place.  Ronald Snider ("Snider") testified to knowing Mr. McGee due to having dated his aunt for approximately twelve or thirteen years (JA Vol. II at 286). Mr. McGee's aunt is a resident of Steubenville, OH. (JA Vol.II at 296). He further testified to knowing a Mark Watson from high school. Their drug relationship began around March 2013 after Watson told Snider he needed something for the pain associated with his prosthetic leg. (JA Vol. II at 286- 87).  Snider testified that he sold drugs that he purchased from McGee to Watson but that he did not know what Watson did with the drugs, nor did McGee know that Snider sold to Watson.  Snider testified that he obtained cocaine from Mr. McGee on two or three occasions between February 2013 and April 2013, each time was in Steubenville, Ohio. (JA 299)

Mark Watson (hereinafter "Watson") first testified that he and some friends purchased cocaine from Ronald Snider (hereinafter "Snider") on several occasions. Per his testimony he had purchased cocaine from Snider approximately three times; once in Steubenville, OH and twice in Weirton, WV. (JA Vol. I at 164). No evidence was presented regarding either of the alleged buys that supposedly occurred in WV. Watson testified that he would place a call to Snider, Snider

would call his "source" and they would go to a location and wait for the "source" to bring the cocaine. (JA Vol. I at 165).

According to Watson, he began working as a Confidential Informant for the Jefferson County Task Force (hereinafter "JCTF") after Detective Hanlin found cocaine in his vehicle during a stop on Good Friday in 2013. (JA Vol. I at 168). He was subsequently asked to "help" the JCTF in exchange for avoiding the charges for the cocaine found in his vehicle. (JA Vol. I at 168-69).

On April 2, 2013, Watson's car was wired to obtain visual and audio communications of the controlled buy that was to take place between Watson, Snider and the "source." Watson testified that he was given eight hundred ($800) dollars to use towards the purchase of cocaine during the controlled buy. (JA Vol. I at 172). He then picked up Snider and they drove around for 15-30 minutes before they met up with the "source." (JA Vol. I at173).

Despite Watson's identification of Mr. McGee during direct examination, his later testimony elicits information relating to his lack of knowledge regarding Mr. McGee. During cross- examination by Mr. McGee's counsel, Watson admitted to the following: (1) that he never purchased drugs directly from Mr. McGee; (2) that he was never introduced to Mr. McGee; (3) that he did not know Mr. McGee; (4) that Mr. McGee did not know Watson was the end purchaser; and (5) that all final purchases were made in Steubenville, OH. (JA Vol. I at 186). In addition,

Watson testified that he had never had Snider get cocaine from McGee prior to Spring 2013. (JA Vol. I at 193). Per Watson's testimony, the conspiracy did not begin until Spring 2013 and all purchases were made in Ohio.

While the government presented absolutely NO evidence that Defendant McGee's "source" for drugs distributed to Ashley Hayes and Ronald Snider were one and the same, the government "implied" through its closing argument that McGee's source was the same in an effort to tie multiple and distinct "drug distributions" into one conspiracy.

The government's attempt to elicit a speculative link of sources was not admitted by the Court. (JA 376-377). As such no link was ever made to justify a mutual source for Mr. McGee and Ronald Snider.

The lack of evidence to tie the alleged conspiracy to the Northern District of West Virginia, the lack of evidence to tie the individual drug distributors in a conspiracy, and the government's failure to prove that Mr. McGee committed any act in furtherance of the conspiracy in West Virginia, all contributed to the government's failure to prove its case beyond a reasonable doubt. In fact, the government failed to prove its only evidence of an alleged overt act in West Virginia when the jury found Mr. McGee not guilty on Count Two.

The government could not and did not prove its case. The government called multiple witnesses who failed to demonstrate that Mr. McGee participated in

8

a conspiracy beginning in November 2012 and continuing until April 2013. The government used every bit of inadmissible 404(b) evidence to convict Mr. McGee. And, in fact, the jury itself proved its confusion by the question posed during deliberation, "Do the two people mentioned in indictment one, do the conspiracy stated have to start in November?" (JA 551)  This question, in and of itself, clearly demonstrates the confusion caused by the admission of 404(b) evidence.  The trial was plagued with error requiring a reversal of the conviction or alternatively, a new trial and resentence.

## SUMMARY OF ARGUMENTS

### I.

The district court erred in admitting 404(b) evidence over Defendant's objection in three specific instances:

A. Admitting controlled buys from an entirely unrelated and botched investigation through government informant Ashley Hayes.

B. Admitting unreliable evidence of alleged marijuana and heroin distributions amidst allegations of a conspiracy to distribute of cocaine powder.

C. Admitting irrelevant and prejudicial, unrelated and unnecessary, evidence of armed robbery and domestic violence through the admission of an unredacted sentencing order.

### II.

Insufficient evidence existed to prove Mr. McGee engaged in a single conspiracy lasting from November, 2012 to June, 2013 as alleged in the Superseding Indictment because the only evidence of alleged drug distribution from November, 2012 until February, 2013 involved a government informant, incapable of being a co-conspirator by law. Further, the government failed to prove the requisite nexus or overt act to link Mr. McGee to any drug conspiracy within the Northern District of West Virginia.

### III.

The district court violated Mr. McGee's constitutional right to be present during the discussion and formulation of a response to a jury question, namely,

"Do the two people mentioned in indictment one, do the conspiracy stated have to start in November?"

IV.

The District Court's application of U.S.S.G. § 4B1.1 demonstrates reversible error in the consideration of the following prior convictions, namely:

a.    1989 conviction for aggravated robbery pursuant to ORC § 2911.01 for being outside the 15 year time frame for consideration of the same;

b.    2004 conviction for possession of drugs pursuant to ORC § 2925.11 in that it did not contain the requisite "intent" to distribute; and

c.    2009 convictions for trafficking in drugs pursuant to ORC § 2925.03

V.

The district court committed reversible error in applying a two level enhancement for obstruction of justice based upon Mr. McGee's presentation of evidence regarding the informant for the purpose of demonstrating bias.

## ARGUMENTS

## Standards of Review

### I.

When the offered evidence is of extrinsic acts covered by Rule 404(b), it is well established in this Circuit that the district court's decision to admit evidence under Rule 404(b) will not be overturned on an appeal absent an "arbitrary or irrational" abuse of discretion. *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988).

### II.

Whether the evidence was sufficient to justify Defendants' convictions is subject to the following standard: The reviewing court must determine whether "any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt," considered in the light most favorable to the government. *United States v. Wilson*, 115 F.3d 1185 (4th Cir. 1997).

### III.

Violations of Rule 43(a) are subject to a harmless error analysis pursuant to Fed. R. Crim. P. 52(a). *United States v. Arrigada*, 451 F.2d 487 (4th Cir. 1971).

### IV.

To be categorized as a career offender, Williams must have sustained at least two felony convictions for either a crime of violence or a crime involving a

controlled substance prior to committing the controlled substance offense for which he is presently being sentenced. *See* U.S.S.G. Sec. 4B1.1; *United States v. Bassil*, 932 F.2d 342, 346 (4th Cir. 1991). Whereas Guideline application questions are subject to a due deference standard of review, because this issue involves a legal interpretation of the guideline section, "the standard moves closer to de novo review." *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989).

## V.

The determination of whether to apply a two level enhancement for obstruction of justice is clearly a factual issue and thus is reviewable under a clearly erroneous standard. *United States v. Puckett*, 61 F.3d 1092 (4th Cir. 1995).

## Discussion

### I.

**The district court erred in admitting 404(b) evidence over Defendant's objection in three specific instances:**

> **A.** **Admitting controlled buys from an entirely unrelated and botched investigation through government informant Ashley Hayes.**

> **B.** **Admitting unreliable evidence of alleged marijuana and heroin distributions amidst allegations of a conspiracy to distribute of cocaine powder.**

> **C.** **Admitting irrelevant and prejudicial, unrelated and unnecessary, evidence of armed robbery and domestic violence through the admission of an unredacted sentencing order.**

### A.

### ERROR IN THE ADMISSION OF ASHLEY HAYES BUYS

Rarely can a jury question in and of itself demonstrate the rationale for the prohibition of 404(b) evidence.  However, if ever there was a case which demonstrates confusion of issues by the jury, this is the case.  During deliberations, the jury posed a question:  "Do the two people mentioned in indictment one, do the conspiracy stated have to start in November?" (JA 551)

The question, in and of itself, clearly demonstrates the confusion caused by the admission of 404(b) evidence.

This court reviews the district court's decision to admit evidence of bad acts under Rule 404(b) for abuse of discretion. *See United States v. Mark*, 943 F.2d

444, 447 (4th Cir. 1991). Rule 404(b) decisions are not reversed unless they are "arbitrary or irrational." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995). Rule 404(b) provides for exclusion of prior bad acts evidence that is relevant only to the issue of character. It does not require exclusion of evidence offered to establish opportunity, motive, intent, preparation, plan, knowledge, identity, or absence of mistake. *See* Fed. R. Evid. 404(b); *United States v. Bailey*, 990 F.2d 119, 122 (4th Cir. 1993).

In this case, the district court abused its discretion in not only permitting the government to use 404(b) evidence but also in the method by which it introduced the evidence.  The superseding indictment charged a conspiracy to distribute cocaine within the Northern District of West Virginia from November 2012 until June, 2013.  Yet, viewing the evidence in a light most favorable to the government, no evidence existed to prove any conspiracy involving Mr. McGee began until March, 2013 ~ and, that conspiracy was never proven to have existed in the Northern District of West Virginia. (JA 286-299)  Even the government's weak attempt to establish an overt act in the Northern District of West Virginia failed when the jury found Mr. McGee NOT GUILTY of Count Two. (JA 562)

In its zealous prosecution of an otherwise weak case, the government chose to pollute the waters by the introduction of five (5) irrelevant, non-probative controlled buys with informant Ashley Hayes which could not legally be

considered part of the conspiracy; and, all of which occurred in Steubenville, Ohio and ***did not occur*** in the Northern District of West Virginia.

The government informant, Ashley Hayes (hereinafter "Hayes"), testified that she was a resident of Steubenville, Ohio, (JA Vol. II at 254) and that she started working as a confidential informant for the JCTF in 2009. (JA Vol. II at 380). Hayes testified that on the following dates, she made a controlled buy from Mr. McGee in Steubenville, Ohio:

A.    November 8, 2012 (JA Vol. II at 360);

B.    November 13, 2012 (JA Vol.II at 361);

C.    November 14, 2012 (JA Vol. II at 362);

D.    November 15, 2012 (JA Vol. II at 365); and

E.    November 19, 2012 (JA Vol. II at 366).

At the time of each and every one of these buys, the Jefferson County Task Force of Steubenville, Ohio was making buys for the purpose of indicting Mr. McGee in Ohio State Court. Unfortunately, for the task force, Hayes "went South" on them in January, 2013 when she sold the task force "fake drugs" and tried to implicate McGee in yet another "controlled buy." (JA Vol. II, 368-369). In January, 2013, the Jefferson County Task Force had no "conspiracy" case against Mr. McGee in Ohio and absolutely no evidence existed for any conspiracy within the Northern District of West Virginia. Nevertheless, in its zeal to prosecute Mr.

McGee, an incident within the Northern District of West Virginia on March 30, 2013, re-ignited the Jefferson County Ohio task force's interest in Mr. McGee and they joined forces with the DEA within the Northern District of West Virginia to prosecute Mr. McGee in federal court.

As a result of the incident on March 30, 2013, the government indicted Mr., McGee Count for possession with intent to distribute marijuana on March 30, 2013.  Unfortunately, for the Jefferson County Task Force, its attempt to link Mr. McGee to the Northern District of West Virginia failed when the jury returned a ***not guilty verdict*** as to Count II (JA 562).

The jury was obviously concerned about the lack of connection between the five (5) irrelevant and non-conspiratorial buys inasmuch as it posed a question during deliberations demonstrating its confusion.  Despite Mr. McGee's attempt to separate these irrelevant buys and the district court's instruction that an informant is a government agent incapable of being a co-conspirator, the jury returned a guilty verdict as to a conspiracy which began in November, 2012 and continued until the date of the Indictment.  If ever there was a clear demonstration of the likelihood of 404(b) evidence to confuse the issues, this is the case.

**B.**

**ERROR IN THE ADMISSION OF UNCHARGED DRUG DISTRIBUTION**

The District Court erred in admitting scattered unrelated allegations of isolated incidents related to the distribution of heroin, crack cocaine, and marijuana when the Indictment charged a conspiracy to distribute cocaine powder.  (JA 89-103)

Rule 404(b) sets forth which of several uses of extrinsic act evidence is forbidden:  evidence relating to a defendant's other crimes, wrongs, or acts is inadmissible to show that he acted in conformity with that character on a particular occasion.  Rule 404(b) also states which uses of evidence are permissible:  prior acts of misconduct may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404.  *See* McCormick, *Law of Evidence*, § 188 at 445 (2d ed. 1972).

In other words, the question is whether the evidence proves a material fact <u>without</u> requiring <u>any</u> inference of the defendant's criminal disposition.  22 Wright & Graham, *Federal Practice & Procedure*, § 5239, at 432 (Supp. 1987).

The rationale behind this rule is the notion that Rule 404(b) evidence has slight probative value but has the tendency to confuse issues or be highly prejudicial.  *Id.   See Cohn v. Papke*, 655 F.2d 191 (9th Cir. 1981); *Reyes v.*

*Missouri Pacific Railroad Co.*, 589 F.2d 791, 793 (5th Cir. 1979). The Notes of

the Advisory Committee on the proposed rules succinctly express this concern:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and punish the bad man because of their respective characters despite what the evidence in the case shows actually.

Moreover, even when "other act" evidence could be introduced for

permissible purposes, there is still a danger that a defendant will be convicted

because he committed a bad act. Therefore, the use of 404(b) evidence must be

carefully circumscribed and limited. *United States v. Bailleaux*, 685 F.2d 1105,

1109 (9th Cir. 1982).

Of course, there must be <u>substantial</u> <u>need</u> for the probative value of the

evidence. As explained in *Bailleaux*:

> Courts must be extremely careful to guard against the danger that defendants will be convicted because they have previously committed a serious criminal offense rather than because the government has introduced evidence sufficient to prove beyond a reasonable doubt that they are guilty of the offense for which they are being tried. This danger exists whenever a jury is advised of the fact of a prior earlier conviction, or evidence relating to earlier criminal conduct is admitted. For that reason, the use of such evidence must be narrowly circumscribed and limited.

*Bailleaux*, 685 F.2d at 1109. Therefore, the district court should consider the <u>need</u>

for the Rule 404(b) evidence in light of other evidence available to the

government. *Id*. *See also Myers*, 550 F.2d at 1044. The government must "articulate precisely the evidential hypothesis by which the consequential fact [at issue in the trial] may be inferred from the proffered evidence," 2 *Weinstein's Evidence*, ¶ 404[8], before the district court may consider introduction of Rule 404(b) evidence before the trier of fact.

Taken together, these procedural safeguards protect a criminal defendant from introduction of prior bad acts where the sole relevancy or purpose is to demonstrate that the accused has a bad character or was disposed to commit the crime charged. *Michelson v. United States*, 335 U.S. 469, 475-76 (1948). Of course, the district court must articulate on the record the reasoning underlying any decision to admit Rule 404(b) evidence. *United States v. Robinson*, 700 F.2d 205 (5th Cir. 1983).

Mr. McGee was ONLY charged with an alleged conspiracy involving the distribution of cocaine powder in the Northern District of West Virginia. Mr. McGee was NOT charged with any drugs involving marijuana, crack cocaine or heroin in Steubenville, Ohio. Counsel for McGee argued in pretrial motion hearings that the inherently prejudicial effect of admitting evidence involving the alleged possession with intent to distribute OTHER drugs, and the inherently prejudicial effect of admitting five (5) unrelated controlled buys would likely

confuse and mislead the jury.  That it did.  Unfortunately for Mr. McGee, the "pile on" of additional 404(b) evidence continued.

## C.

### THE TRIAL COURT ABUSED ITS DISCRETION AND REVERSIBLY ERRED IN ADMITTING PREJUDICIAL, IMMATERIAL AND IRRELEVANT EVIDENCE OF MR. MCGEE'S PRIOR CONVICTIONS FOR AGGRAVATED ROBBERY, DOMESTIC VIOLENCE; COUPLED WITH EVIDENCE OF MR. MCGEE SERVING A CRIMINAL SENTENCE AT THE TIME OF THE CURRENT OFFENSE

Mr. McGee submits that the trial court abused its discretion and reversibly erred in admitting over objection, prejudicial, immaterial and irrelevant evidence of Mr. McGee's prior conviction for aggravated robbery; Mr. McGee's prior conviction for domestic violence;  and evidence of Mr. McGee being under a criminal sentence at the time he allegedly committed the instant offense of conviction. Mr. McGee maintains that the admission of this evidence held no probative value to the underlying charges and/or prosecution at hand, and was admitted solely to suggest bad character of the Mr. McGee, contrary to Rules 403 and 404(b) of the Federal Rules of Evidence.

Specifically, during jury deliberations in this matter, the trial court permitted the jury to take into the jury room and consider, unrestricted, a 2004 Judgment identifying that Mr. McGee was previously convicted of aggravated robbery and domestic violence, and was moreover serving a sentence on the domestic violence

21

charge when he allegedly committed the instant offense of conviction. Mr. McGee lodged a timely and proper objection with the trial court, however, to no avail.

An application of the 404(b) analysis to the admission of evidence relating to Mr. McGee's prior aggravated robbery conviction, his prior domestic violence conviction, and the service of the domestic violence sentence at the time he allegedly committed the 2004 offense was not closely relevant to Mr. McGee's drug conspiracy prosecution, nor was the evidence probative to the prosecution. The government only admitted the prejudicial evidence to suggest the Mr. McGee's bad character as a person in order to show action in conformity therewith. Rule 403 provides a more limited bar to otherwise admissible evidence. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

The Fourth Circuit has always held that evidence sought to be admitted under Rule 404(b), such as that evidence at issue herein, must also satisfy Rule 403's requirement. Under this rule, "damage to a defendant's case is not a basic for excluding probative evidence," because "evidence that is highly probative invariably will be prejudicial to the defense." *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998). Rule 403 therefore requires suppression of evidence that

results in unfair prejudice, prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion  ( and when that unfair prejudice substantially outweighs the probative value of the evidence." *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003). Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

As it relates to the other evidence against Mr. McGee, the record is clear that there is no sufficient evidence by which to consider the admission of aggravated robbery and domestic violence convictions in this case.  The district court's admission of the same was prejudicial. For all of the foregoing reasons, Mr. McGee maintains that the trial court abused its discretion in admitting the irrelevant, prejudicial and immaterial evidence of his prior aggravated robbery and domestic violence convictions, and prays this Honorable Court vacate the judgment of the trial court and remand this matter for a new trial.

## II.

**Insufficient evidence existed to prove Mr. McGee engaged in a single conspiracy lasting from November, 2012 to June, 2013 as alleged in the Superseding Indictment because the only evidence of alleged drug distribution from November, 2012 until February, 2013 involved a government informant, incapable of being a co-conspirator by law. Further, the government failed to prove the requisite nexus or overt act to link Mr. McGee to any drug conspiracy within the Northern District of West Virginia.**

The standard of sufficiency is that there must be "substantial evidence, taking the view most favorable to the Government, to support [the jury verdict]." *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942). *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013). In reviewing the sufficiency of the evidence supporting a conviction, the Court must determine whether, viewing the evidence in the light most favorable to the Government and accepting the fact finder's credibility determinations, the verdict is supported by substantial evidence, that is, "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. King*, 628 F.3d 693, 700 (4th Cir. 2011) (internal quotation marks omitted). While "a defendant bringing a sufficiency challenge must overcome a heavy burden, and reversal for insufficiency must be confined to cases where the prosecution's failure is clear." *United States v. Engle*, 676 F.3d 405, 419 (4th Cir.) (internal quotation marks and citations omitted), *cert. denied*, 133 S. Ct. 179 (2012).

24

In this case, the evidence is not only insubstantial, it does not exist even when viewed in a light most favorable to the government and therefore, McGee's conviction must be reversed. The government presented at most, evidence of multiple and individual drug distributions, none of which were involved in a single conspiracy, none of which involved an overt act by an alleged "conspirator" in the Northern District of West Virginia. However, the single conspiracy charge permitted the government to enter evidence of prior convictions that would otherwise have been inadmissible under Rule 404(b).

To prove conspiracy to possess cocaine base with intent to distribute, the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. *See United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984), *cert. denied*, 469 U.S. 1105, 105 S. Ct. 777, 83 L. Ed. 2d 773 (1985); *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996).

The government cannot use multiple conspiracies as evidence to support an indictment for a single conspiracy; the evidence at trial may not vary impermissibly from the allegations of the indictment. *Kotteakos v. United States*, 328 U.S. 750 (1946). A defendant may establish a fatal variance "when the

evidence at trial establishes facts materially different from those alleged in the indictment." *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994).

In *United States v. Goss*, the Fourth Circuit struck down a conspiracy conviction in a case in which the government had charged 10 defendants (though it identified 25 co-conspirators) with "white liquor" violations and alleged a single conspiracy involving multiple conspirators in multiple locations. 329 F.2d 180 (4th Cir. 1964). The court struck down the conviction because the evidence failed to prove any "unitary scheme" or "common aim;" rather it presented a series of undoubtedly criminal activities that had no evident relation to each other. *Id.* at 183-184. The court observed that the criminal activities proven at trial were "so far apart and so differently peopled as to destroy any semblance of relationship." Id. at 183.

McGee's case differs from *Goss*, in that the alleged conspiracy involves fewer actors and is based on very few alleged overt acts (all occurring in Ohio), but the government's allegation of a single, overreaching conspiracy beginning in November, 2012, and concluding on or about the date of the Indictment is subject to similar problems of proof. One of the primary deficiencies in the case against McGee is a lack of co-conspirators, particularly in the early stages of the alleged conspiracy in November, 2012 when the only evidence consists of individual buys

with a government informant in Steubenville, Ohio. The facts enumerated above fail to prove a single conspiracy as alleged in the indictment.

The evidence presented in this case was that multiple conspiracies existed, if any. The government's evidence demonstrated that McGee distributed single hits of cocaine to a government informant Ashley Hayes beginning in November, 2012 and continuing through January, 2013 in Steubenville, Ohio. (JA 360-370)

The government's evidence next picked up with alleged dealings between Ronald Snider and Defendant McGee in Steubenville, Ohio in February, 2013 and continuing through April, 2013 when the "buy-bust" took place. Ronald Snider ("Snider") testified to knowing Mr. McGee due to having dated his aunt for approximately twelve or thirteen years (JA Vol. II at 286). Mr. McGee's aunt is a resident of Steubenville, OH. (JA Vol.II at 296). He further testified to knowing a Mark Watson from high school. Their drug relationship began around March 2013 after Watson told Snider he needed something for the pain associated with his prosthetic leg. (JA Vol. II at 286-87). Snider testified that he sold drugs that he purchased from McGee to Watson but that he did not know what Watson did with the drugs, nor did McGee know that Snider sold to Watson. Snider testified that he obtained cocaine from Mr. McGee on two or three occasions between February 2013 and April 2013, each time was in Steubenville, Ohio. (JA 299)

Mark Watson (hereinafter "Watson") first testified that he and some friends purchased cocaine from Ronald Snider (hereinafter "Snider") on several occasions. Per his testimony he had purchased cocaine from Snider approximately three times; once in Steubenville, OH and twice in Weirton, WV. (JA Vol. I at 164). No evidence was presented regarding either of the alleged buys that supposedly occurred in WV. Watson testified that he would place a call to Snider, Snider would call his "source" and they would go to a location and wait for the "source" to bring the cocaine. (JA Vol. I at 165).

According to Watson, he began working as a Confidential Informant for the Jefferson County Task Force (hereinafter "JCTF") after Detective Hanlin found cocaine in his vehicle during a stop on Good Friday in 2013. (JA Vol. I at 168). He was subsequently asked to "help" the JCTF in exchange for avoiding the charges for the cocaine found in his vehicle. (JA Vol. I at 168-69).

On April 2, 2013, Watson's car was wired to obtain visual and audio communications of the controlled buy that was to take place between Watson, Snider and the "source." Watson testified that he was given eight hundred ($800) dollars to use towards the purchase of cocaine during the controlled buy. (JA Vol. I at 172). He then picked up Snider and they drove around for 15-30 minutes before they met up with the "source." (JA Vol. I at173).

Despite Watson's identification of Mr. McGee during direct examination, his later testimony elicits information relating to his lack of knowledge regarding Mr. McGee. During cross- examination by Mr. McGee's counsel, Watson admitted to the following: (1) that he never purchased drugs directly from Mr. McGee; (2) that he was never introduced to Mr. McGee; (3) that he did not know Mr. McGee; (4) that Mr. McGee did not know Watson was the end purchaser; and (5) that all final purchases were made in Steubenville, OH. (JA Vol. I at 186). In addition, Watson testified that he had never had Snider get cocaine from McGee prior to Spring 2013. (JA Vol. I at 193). Per Watson's testimony, the conspiracy did not begin until Spring 2013 and all purchases were made in Ohio.

While the government presented absolutely NO evidence that Defendant McGee's "source" for drugs distributed to Ashley Hayes and Ronald Snider were one and the same, the government "implied" through its closing argument that McGee's source was the same in an effort to tie multiple and distinct "drug distributions" into one conspiracy.

The government's attempt to elicit a speculative link of sources was not admitted by the Court. (JA 376-377). As such no link was ever made to justify a mutual source for Mr. McGee and Ronald Snider.

The lack of evidence to tie the alleged conspiracy to the Northern District of West Virginia, the lack of evidence to tie the individual drug distributors in a

conspiracy, and the government's failure to prove that Mr. McGee committed any act in furtherance of the conspiracy in West Virginia, all contributed to the government's failure to prove its case beyond a reasonable doubt. In fact, the government failed to prove its only evidence of an alleged overt act in West Virginia when the jury found Mr. McGee not guilty on Count Two.

The "gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." *United States v. Laughman*, 618 F.2d. 1067, 1074 (4th Cir. 1980). The jury acquitted McGee of the only "overt act" which was alleged to have occurred in West Virginia. The remainder of the alleged "overt acts" transpired in Steubenville, Ohio. Evidence of other "conspiratorial" activity derived from McGee's prior convictions, rather than from evidence offered in the conspiracy trial itself.

The evidence proffered by the government at trial varied fatally from the indictment which charged a conspiracy which began in November, 2012. "Evidence must be such that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Clear indication regarding the jury's doubt about the evidence came in the form of a question seeking guidance as to whether the evidence had to match the conspiracy dates alleged in the indictment.

This case is almost identical in facts to a case decided in the Fourth Circuit, wherein Defendant's convictions were reversed for insufficiency of evidence in a drug conspiracy case. *United States v. McLean*, No. 96-4789 (4th Cir. 1998) Like the Defendant in *McLean*, the government's evidence shows what might be termed a non-conspiratorial, though criminal, period from November, 2012 until April, 2013, or a criminal period from November, 2012 until April, 2013 involving different individuals. Like *McLean*, McGee is not an exemplary citizen and he may be the common denominator in what the government believes were conspiracies, but this fact does not offset the error. As stated by the United States Supreme Court in *Kotteakos*, "[The government may not] string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus amount them lies in the fact that one man participated in all." *Kotteakos*, 328 U.S. at 773.

Under similar facts, the Fourth Circuit stated:

The government has therefore shown no overlap in the actors (with the exception of McLean) and no "unitary scheme" or "common aim" among co-conspirators for the period before 1987. *See, e.g., Goss*, 329 F.2d at 183 (conspiracy not established when only thing in common was law defendants were breaking). Where the evidence proffered to support the crime of which a defendant is convicted is insufficient, we will not refrain from overturning a jury verdict. "[A] properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt . . . . In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). Where, as here, the lack of evidence is such

that a "reasonable fact-finder" could not have found that the government established an overarching 26-year conspiracy, we must reverse the judgment of conviction and remand for entry of a judgment of acquittal.

We also recognize that a variance between the indictment and facts proved at trial may be harmless error. *Kennedy*, 32 F.3d at 883; Fed. R. Crim. P. 52(a). The question is therefore whether the variance violated McLean's substantial rights, and we find that it did. The government exceeded its bounds by charging and attempting to prove a 26-year conspiracy for which its evidence was sketchy at best.

In this case the variance between the indictment and the facts proved at trial cannot be determined to be harmless. The government failed to sustain its burden of proof as to the conspiracy. No overt act occurred in the Northern District of West Virginia. The government failed to prove a single conspiracy.

## III.

**The district court violated Mr. McGee's constitutional right to be present during the discussion and formulation of a response to a jury question, namely, "Do the two people mentioned in indictment one, do the conspiracy stated have to start in November?"**

As his third appellate claim for relief, Mr. McGee suggests that the trial court abused its discretion when it discussed a question presented by the jury during deliberations and thereafter formulating a response outside the presence of the Mr. McGee.

Mr. McGee's claim is governed by Rule 43 of the Federal Rules of Criminal Procedure, which codified the defendant's right to be present at every stage of the

trial under the Fifth and Sixth Amendments. *See United States v. Camacho*, 955 F.2d 950, 952 (4th Cir. 1992).

Rule 43(a) provides: "The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence , except as otherwise provided by this rule." Fed. R. Crim. P. 43(a). In *Rogers v. United States*, 422 U.S. 35, 39, 45 L. Ed. 2d 1, 95 S. Ct. 2091 (1975), the Supreme Court held that "[T]he orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties . . . to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict." In *Rogers*, after some two hours of deliberation, the jury sent out a note inquiring if the judge would "accept the verdict 'Guilty as charged with extreme mercy of the Court.'" Without notifying the defendant or his counsel, the judge instructed the marshal to deliver a note "to advise the jury that the Court's answer was in the affirmative. '" *Id.* at 36. The Court held that a Rule 43 violation occurred due to the defendant's absence during the interchange. The Supreme Court stated that the rule required that notes sent out by the jury "should [be] answered in open court and petitioner's counsel should [be] given an opportunity to be heard before the trial judge respond[s]." In *Rogers*, the district court did neither of these things, and instead answered the jury's note by way of an

oral relay through the marshal without informing the defendant or counsel. *Id.* at 36. The court stated that a violation of Rule 43 could be harmless error, but after considering the substance of the information in the judge's answer and the manner in which the judge" s response was relayed to the jury, the Court held that prejudicial error occurred. *Id.* at 40.

In the case at bar, counsel for Mr. McGee was eventually present in the courtroom ~ a distinguishing factor from Rogers. However, like Rogers, Mr. McGee submits that his absence from the reading of, discussion thereof, and formulation of the response to the jury question, in the first instance, violated his Fifth and Sixth Amendment right to be present at all critical stages of the criminal proceeding. (JA 551-556).

The Supreme Court in *Rogers* held that the Defendant's constitutional right to be present a critical stage of the proceeding was violated when the defendant was not present during the formulation of an answer to a jury question. In accord with the Supreme Court's Opinion in *Rogers*, the Fourth Circuit has held that in the absence of the Defendant, it is likewise a technical violation to conduct discussions with counsel about a substantive question with respect to its instructions sent out by a deliberating jury. *See United States v. Harris*, 814 F.2d 155 (4th Cir. 1987)(per curiam).  In *Harris*, this Court held that the district court committed a technical violation of Fed. R. Crim. P. 43(a) when it responded to a question posed

by the jury during its deliberations at a time when the defendant was not in the courtroom. However, in applying a harmless error analysis pursuant to Fed. R. Crim. P. 52(a), it held that in light of the fact that defendant's counsel was present and that prompt remedial measures were taken by the district court, the error was harmless."

While the facts of *Harris* and this case are similar, Mr. McGee seeks review of the issue and respectfully requests that this Court consider the issue in a totality of circumstances and find that a reversal of the conviction for a new trial should be granted.

## IV.

**The District Court's application of U.S.S.G. § 4B1.1 demonstrates reversible error in the consideration of the following prior convictions, namely:**

a. **1989 conviction for aggravated robbery pursuant to ORC § 2911.01 for being outside the 15 year time frame for consideration of the same;**

b. **2004 conviction for possession of drugs pursuant to ORC § 2925.11 in that it did not contain the requisite "intent" to distribute; and**

c. **2009 convictions for trafficking in drugs pursuant to ORC 2925.03.**

Michael McGee was sentenced to two hundred sixty two (262) months incarceration under the Federal Sentencing Guidelines due to his career offender status as well as a characterization that he obstructed justice. Such a sentence was

based upon an erroneous use of Defendant's prior criminal history and did not meet the sentencing objectives required by Title 18, United States Code, Section 3553.

To be categorized as a career offender, Williams must have sustained at least two felony convictions for either a crime of violence or a crime involving a controlled substance prior to committing the controlled substance offense for which he is presently being sentenced. *See* U.S.S.G. Sec. 4B1.1; *United States v. Bassil*, 932 F.2d 342, 346 (4th Cir. 1991). Whereas Guideline application questions are subject to a due deference standard of review, because this issue involves a legal interpretation of the guideline section, "the standard moves closer to de novo review." *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989).

In this case, the District Court's use of the following prior convictions to enhance Defendant as a career offender was error, specifically,

A.    1989 conviction for aggravated robbery pursuant to Ohio Revised Code (ORC) 2911.01;

B.    2004 conviction for possession of drugs pursuant to ORC § 2925.11; and

C.    2009 conviction for trafficking in drugs pursuant to ORC § 2925.03.

A.    **THE 1989 CONVICTION FOR AGGRAVATED ROBBERY PURSUANT TO OHIO REVISED CODE (ORC) 2911.01 SHOULD NOT COUNT AS A PREREQUISITE CONVICTION**

U.S.S.G. § 4A1.2(e)(1) grants only a fifteen year window for prior imposed sentences greater than thirteen months.  Specifically, it states:

e)    **Applicable Time Period**

(1)    Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.

Defendant was sentenced to a term of 7-25 years incarceration on July 13, 1989, which sentence was not imposed within the 15 year window.

Defendant does concede that he was no longer incarcerated on January 3, 2000, which is barely within the fifteen year window as permissible by the second part of the § 4A1.2(e)(1).

B.    **THE 2004 CONVICTION FOR POSSESSION OF DRUGS PURSUANT TO ORC § 2925.11 SHOULD NOT COUNT AS A PREREQUISITE CONVICTION.**

According to U.S.S.G § 4B1.2, the term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

37

U.S.S.G. § 4B1.2(b) further states that simple possession - that is, possession without the proof beyond a reasonable doubt of the requisite intent to "manufacture, import, export, distribute, or dispense"-is not a controlled substance offense. *See United States v. Montanez*, 442 F.3d 485, 493 n.5 (6th Cir. 2006).

The statute under which Defendant was convicted in 2004 was O.R.C. § 2925.11 for possession and did not include an element of manufacture, import, export, distribution, or dispensing.  As such, this conviction should not have been considered when determining Defendant's career offender status.

**C.**     **THE 2009 CONVICTION FOR TRAFFICKING IN DRUGS PURSUANT TO ORC § 2925.03 SHOULD NOT COUNT AS A PREREQUISITE CONVICTION**

The government's version of the offense (paragraph 16) erroneously stated that Defendant was convicted under the "current version of 2925.03"   The Defendant was arrested for the crime on September 15, 2008, the case was opened on October 28, 2008, the Indictment was not returned until November 5, 2008.

A look at the underlying charges demonstrates that the underlying statute's definitions at the time of his underlying crime did not have as an element of proof the "intent to distribute, etc…" The legislative history indicates that the pertinent amendment to this statute occurred on the following dates:

Amended by 130th General Assembly File No. 25, HB 59, § 101.01, eff. 9/29/2013.

Amended by 129th General Assembly File No. 189, HB 334, § 1, eff. 12/20/2012.

Amended by 129th General Assembly File No. 131, SB 337, § 1, eff. 9/28/2012.

Amended by 129th General Assembly File No. 43, HB 64, § 1, eff. 10/17/2011.

Amended by 129th General Assembly File No. 29, HB 86, § 1, eff. 9/30/2011.

Effective Date: 01-01-2004; 05-17-2006; 07-01-2007; 2008 HB195 09-30-2008.

The most current amendment of ORC § 2925.03(A)(1) occurred on September 30, 2008, fifteen days *after* the underlying crime of conviction. Since the 2009 conviction does not contain the element of intent to distribute, as a prerequisite for career offender status, the former ORC § 2925.03(A)(1), under which Defendant was arrested, does not constitute a controlled substance offense under the federal definition. *See United States v. Montanez*, 442 F.3d 485, 493 n.5 (6th Cir. 2006).

For the reasons set forth herein, Defendant challenges the use of these convictions as prerequisite to the characterization as a career offender. Based on the statutory language, two of Defendant's predicate convictions do not qualify as a controlled substance offense. Therefore, Defendant should not have been characterized as a career offender and thus deserved a category V, Level 14 sentencing of 33-41 months.

Wherefore, Mr. McGee respectfully requests a remand for resentencing.

**V.**

**The district court committed reversible error in applying a two level enhancement for obstruction of justice based upon Mr. McGee's presentation of evidence regarding the informant for the purpose of demonstrating bias. The Defendant should not be penalized with an obstruction of justice enhancement merely because he exercised his constitutional right to trial.**

The District Court erred in erroneously using facts not pertinent to the count of conviction in applying a two level increase for obstruction of justice.  All parties and the Court conceded that the cooperating witness to whom the recording applied could not legally be part of the conspiracy because 1) she was an agent of the government, and 2) her "controlled buys" had no relevance to the actual count of conviction.

The government represented that "according to trial testimony …. Defendant orchestrated a fake controlled buy."  Absolutely no evidence exists to prove that Defendant had anything to do with the fake buy, or orchestrating it.  In fact, the evidence demonstrated that neither Defendant nor his vehicle were anywhere around on the day the informant sold the fake drugs.

The fact of the matter is that Defendant introduced the tapes to demonstrate the informant's bias and unreliability.  U.S.S.G. § 3C1.1 is not intended to punish a defendant for the exercise of his constitutional right to trial.  Defendant did not take the stand and testify.  He merely exercised his constitutional right to cross

40

examine his accusers.  Such action should not be used to enhance Mr. McGee's

sentence for obstruction of justice.

**U.S.S.G. § 3C1.1. Obstructing or Impeding the Administration of Justice** states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing ***of the instant offense of conviction***, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels. (Emphasis supplied)

*Commentary*

*Application Notes:*

1. *In General.—This adjustment applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant.*

   *Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline **if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction**.*

2. *Limitation on application.* ***This provision is not intended to punish a defendant for the exercise of a constitutional right.*** *A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements*

> *sometimes may result from confusion, mistake, or faulty memory and,*
> *thus, not all inaccurate testimony or statements necessarily reflect a*
> *willful attempt to obstruct justice.*

"Any increase in the sentence based upon the defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. * * * If courts could punish defendants for exercising their constitutional right to a jury trial, the right would be impaired by the chilling effect. * * * This prohibition on increased punishment applies 'no matter how overwhelming the evidence of [defendant's] guilt.'" (Brackets sic.) *State v. Morris*, 159 Ohio App. 3d 775, 2005-Ohio-962, 825 N.E.2d 637, ¶ 12, quoting *United States v. Derrick* (C.A.6, 1975), 519 F.2d 1, 3.

Nothing contained within the guideline or its commentary supports the enhancement in this case. First, the introduction of a tape was to demonstrate bias of a confidential informant. Second, the confidential informant's testimony was admitted under Rule 404(b) which implicitly indicates that it did NOT relate to the investigation or prosecution of this Indictment. Third, because the alleged obstruction occurred PRIOR TO the actual alleged conspiracy as it relates to Mr. McGee, the conduct in no way, shape or form relates to the current counts of conviction. As such, the McGee should receive the benefit of a remand for resentencing at the very least.

## <u>CONCLUSION</u>

As Justice Rutledge in *Koteakos v. United States*, 328 U.S. 750, 764-765, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566-1567 (1946), so eloquently stated,

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

If ever there was a case where the error influenced the jury, this is the case. The government's case was weak and it used 404(b) evidence to bolster and support the ultimate conviction. Without the prejudicial evidence, this jury would have found Mr. McGee ***not guilty*** of ***both*** Counts of the Indictment. But for the admission of Ashley Hayes testimony, the jury could not have found that the conspiracy began in November, 2012.

43

For all the reasons set forth above, Mr. McGee seeks a reversal of his conviction, a new trial, and a fair sentencing proceeding.

/s/ Elgine McArdle
Elgine McArdle
MCARDLE LAW OFFICES
2139 Market Street
Suite 206
Wheeling, WV  26003
(304) 232-0700

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains 9,223 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Elgine McArdle
Elgine McArdle

*Counsel for Appellant*


Dated:  August 18, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on August 18, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

> Robert H. McWilliams
> OFFICE OF THE
>   UNITED STATES ATTORNEY
> 1125 Chapline Street
> Suite 3000
> Wheeling, WV  26003
> (304) 234-7734
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/  Shelly N. Gannon
> Shelly N. Gannon
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street
> Suite 230
> Richmond, VA  23219